O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA YOLANDA SUAREZ,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security Administration,<br><br>Defendant. | Case No. ED CV 11-1940-SP<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**INTRODUCTION**

On December 9, 2011, plaintiff Maria Yolanda Suarez filed a complaint against defendant Michael J. Astrue, seeking a review of a denial of Disability Insurance Benefits ("DIB") and Supplemental Security Income benefits ("SSI"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The parties' briefing is now complete, and the court deems the matter suitable for adjudication without oral argument.

Two issues are presented for decision here: (1) whether the Administrative

Law Judge ("ALJ") properly determined at step five that plaintiff is capable of performing work as a small products assembler II, inspector and hand packager, and bench assembler; and (2) whether the ALJ properly evaluated plaintiff's credibility and subjective symptoms. Pl.'s Mem. at 3-6, 6-9; Def.'s Mem. at 2-5, 5-7; Reply at 1-3, 3-4.

Having carefully studied, inter alia, the parties' written submissions and the Administrative Record ("AR"), the court concludes that, as detailed herein, there is no conflict between the Dictionary of Occupational Titles ("DOT") and the testimony of the vocational expert ("VE") as to at least one of the three jobs the VE testified plaintiff can perform, and thus any error at step five was harmless. Further, the ALJ properly discounted plaintiff's credibility and her subjective complaints. Consequently, this court affirms the decision of the Commissioner of the Social Security Administration ("Commissioner") denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was fifty-four years old on the date of her January 4, 2010 administrative hearing, has a ninth grade education. *See* AR at 48, 129. Her past relevant work includes employment as a stock clerk. *Id.* at 48, 135.

On July 29, 2008, plaintiff applied for DIB and SSI, alleging that she has been disabled since October 8, 1999 due to rheumatoid arthritis of the arms, hands, and legs. *See* AR at 116-24, 125-26, 134. Plaintiff's applications were denied initially and upon reconsideration, after which she filed a request for a hearing. *Id.* at 57-65, 68-73, 75.

On January 4, 2010, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. AR at 32-49, 54-55. The ALJ also heard testimony from Sandra Fioretti, a vocational expert. *Id.* at 47-54. On February 5, 2010, the ALJ denied plaintiff's request for benefits. *Id.* at 16-26.

Applying the well-known five-step sequential evaluation process, the ALJ

found, at step one, that plaintiff has not engaged in substantial gainful activity since her alleged disability onset date. AR at 18.

At step two, the ALJ found that plaintiff suffers from severe medically determinable impairments consisting of: rheumatoid arthritis and decreased vision in the left eye. AR at 18.

At step three, the ALJ determined that the evidence does not demonstrate that plaintiff's impairments, either individually or in combination, meet or medically equal the severity of any listing set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR at 20.

The ALJ then assessed plaintiff's residual functional capacity ("RFC")[1] and determined that she can perform less than a full range of light work. AR at 20. Specifically, the ALJ found that: plaintiff can occasionally lift and carry twenty pounds and frequently lift and carry ten pounds; plaintiff can stand and walk for six hours in an eight-hour workday with regular breaks; plaintiff can sit for six hours in an eight-hour workday with regular breaks; plaintiff can perform occasional postural activities; plaintiff cannot perform forceful gripping or grasping with either hand; plaintiff cannot perform work at or above shoulder level with the right dominant arm; and plaintiff has decreased vision in one eye causing decreased depth perception. *Id.*

The ALJ found, at step four, that plaintiff lacks the ability to perform her past relevant work. AR at 23.

At step five, based upon plaintiff's vocational factors and RFC, the ALJ

---

[1] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

found that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform." AR at 24 (emphasis omitted). The ALJ specifically accepted the VE's finding that plaintiff can perform work as a small products assembler II (DOT No. 739.687-030), inspector and hand packager (DOT No. 559.687-074), and bench assembler (DOT No. 706.684-042). *Id.* at 25. The ALJ therefore concluded that plaintiff was not suffering from a disability as defined by the Social Security Act. *Id.* at 16, 26.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. AR at 1-3, 9. The ALJ's decision stands as the final decision of the Commissioner.

## III.
## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g) (2010). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed

simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

### A. Any Error By the ALJ at Step Five Was Harmless

Plaintiff asserts that the jobs specified by the VE, which the ALJ found plaintiff capable of performing, are inconsistent with plaintiff's assessed RFC limitations. *See* Pl.'s Mem. at 3-6. The court disagrees with respect to at least one of the specified jobs. Because the court finds at least one of the specified jobs is consistent with plaintiff's RFC, any error by the ALJ in finding plaintiff capable of performing the other specified jobs was harmless.

At step five, the burden shifts to the Commissioner to show that a claimant retains the ability to perform other gainful activity. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that the claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can perform, given his or her age, education, work experience, and RFC. 20 C.F.R. §§ 404.1512(f) (2012), 416.912(f) (2012).

ALJs routinely rely on the DOT "in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); *see also* 20 C.F.R. §§ 404.1566(d)(1) (2012) (DOT is source of reliable job information), 416.966(d)(1) (2012) (same). The DOT is the rebuttable presumptive authority on job classifications. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring

whether the testimony conflicts with the DOT, and if so, the reasons therefor. *Massachi*, 486 F.3d at 1152-53 (citing Social Security Ruling ("SSR") 00-4p).[2] But failure to so inquire can be deemed harmless error where there is no apparent conflict or the VE provides sufficient support to justify deviation from the DOT. *Massachi*, 486 F.3d at 1154 n.19. In order for an ALJ to accept a VE's testimony that contradicts the DOT, the record must contain "persuasive evidence to support the deviation." *Massachi*, 486 F.3d at 1153 (citing *Johnson*, 60 F.3d at 1435). Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (citations omitted).

In this case, the ALJ asked the VE at the outset of her testimony to state whether her testimony differs from the DOT, and the VE stated she would do so. AR at 48. The VE did not identify any such conflicts (*see id.* at 48-54), and the ALJ subsequently found that "the vocational expert's opinion is consistent with the information contained in the Dictionary of Occupational Titles." *Id.* at 25. The issue here is whether plaintiff's RFC is in fact consistent with the DOT's descriptions of the jobs identified by the VE. Plaintiff argues there are three inconsistencies.

First, the ALJ found that plaintiff "cannot perform forceful gripping or grasping with either hand." AR at 20. Plaintiff argues this is inconsistent with the DOT's description of the small products assembler II job as requiring constant

---

[2] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

6

(exists 2/3 or more of the time) handling and fingering (*see* DOT No. 739.687-030), and with the DOT's descriptions of the inspector and hand packager job and the bench assembler job as requiring frequent (exists from 1/3 to 2/3 of the time) handling and fingering. *See* DOT No. 559.687-074, 706.684-042. But neither handling nor fingering require *forceful* gripping or grasping. *See* Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCODICOT"), Appendix C (1993). As such, there is no conflict. Indeed, the VE implicitly recognized this distinction when she testified, in response to a different hypothetical, that if plaintiff were limited to only occasional use of the hands, she could not perform the jobs identified. *See* AR at 50-51. This handling limitation ultimately was not included within plaintiff's RFC as found by the ALJ, and thus there is no conflict between plaintiff's RFC and the DOT's descriptions of the jobs as requiring frequent or constant handling or fingering.

Second, the ALJ found that plaintiff "cannot perform work at or above shoulder level with the right dominant arm." AR at 20. Plaintiff argues this is inconsistent with the DOT's descriptions stating the small products assembler II job requires constant reaching (*see* DOT No. 739.687-030), and the inspector and hand packager job and the bench assembler job require frequent reaching. *See* DOT No. 559.687-074, 706.684-042. Plaintiff is correct that a reaching requirement is inconsistent with being unable to perform work at or above shoulder level. *See* SCODICOT, Appendix C (reaching involves "[e]xtending hand(s) and arm(s) in any direction"). But plaintiff's RFC limitation applies only to the right dominant arm. As defendant notes, the DOT descriptions do not expressly require reaching with both arms, and other courts have found such a reaching requirement does not require use of both arms. *See McConnell v. Astrue*, No. ED CV 08-667-JC, 2010 WL 1946728, at *7 (C.D. Cal. May 10, 2010) (collecting cases). Thus, there is no conflict between the RFC's limitation on plaintiff's use of her right arm and the DOT descriptions.

And third, the ALJ found that plaintiff "has decreased vision in one eye causing decreased depth perception." AR at 20. Plaintiff argues that this is inconsistent with the DOT's description of the small products assembler II job as requiring constant depth perception (*see* DOT No. 739.687-030), and with the DOT's description of the bench assembler job as requiring frequent depth perception. *See* DOT No. 706.684-042. The court agrees that, at a minimum, this is a potential conflict that the VE needed to address and did not. *See Massachi*, 486 F.3d at 1153. But the inspector and hand packager job requires no depth perception. *See* DOT No. 559.687-074. Although it does require frequent near acuity and accommodation (*see id.*), this is not inconsistent with the ALJ's finding that plaintiff has decreased vision in one eye causing decreased depth perception. Consequently, there is no conflict between plaintiff's RFC and the DOT description of the job of inspector and hand packager.

The VE testified that job of inspector and hand packager has 900 positions regionally and 18,000 positions nationally. AR at 50. Although this is not an enormous number of jobs, it is significant. *See Gray v. Comm'r of Soc. Sec. Admin.*, 365 Fed. Appx. 60, 63 (9th Cir. 2010) (980 jobs in Oregon and 59,000 jobs nationally constitute a significant number of jobs); *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (between 1,000 and 1,500 jobs in local area is a significant number); *cf. Beltran v. Astrue*, 676 F.3d 1203, 1206-07 (9th Cir. 2012) (135 regional jobs and 1,680 national jobs do not constitute a significant number). As such, because the ALJ did not err in finding plaintiff could do the job of inspector and hand packager, even if the ALJ did err in finding plaintiff could do the jobs of small products assembler II and bench assembler, such error was harmless. *See Gray*, 365 Fed. Appx. at 63 (ALJ did not err at step five, even if two of three jobs named by VE were inconsistent with RFC, because no dispute the third job was consistent with RFC).

Accordingly, the ALJ met the Commissioner's step five burden to

demonstrate that plaintiff can perform other jobs that exist in significant numbers in the national economy.

## B. The ALJ Properly Discounted Plaintiff's Credibility and Subjective Complaints

Plaintiff argues that the ALJ failed to properly assess her credibility. *See* Pl.'s Mem. at 6-9. Specifically, plaintiff maintains that the ALJ's credibility finding is not supported by substantial evidence and the record as a whole. *Id.* at 6. The court disagrees.

A claimant carries the burden of producing objective medical evidence of his or her impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms. *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). But once the claimant meets that burden, medical findings are not required to support the alleged severity of pain. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); *see also Light*, 119 F.3d at 792 ("claimant need not present clinical or diagnostic evidence to support the severity of his pain" (citation omitted)).

Instead, once a claimant has met the burden of producing objective medical evidence, an ALJ can reject the claimant's subjective complaint "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." *Benton*, 331 F.3d at 1040. The ALJ may consider the following factors in weighing the claimant's credibility: (1) his or her reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his or her conduct; (3) his or her daily activities; (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

Here, the ALJ did not find evidence of malingering. *See generally* AR at 16-26. Thus, in rejecting plaintiff's credibility the ALJ was required to articulate clear

1  and convincing reasons. *See Benton*, 331 F.3d at 1040. Having carefully reviewed
2  the record, the court finds that the ALJ did, in fact, provide clear and convincing
3  reasons for discounting plaintiff's subjective complaints.
4       First, the ALJ found that the objective medical evidence does not support
5  plaintiff's alleged degree of disability. *See* AR at 23; *see also Batson v. Comm'r*,
6  359 F.3d 1190, 1197 (9th Cir. 2004) ("the lack of objective medical evidence
7  supporting [the claimant's] claims . . . constitute[s] substantial evidence in support
8  of the ALJ's negative credibility determination"); *Thomas*, 278 F.3d at 959 (lack of
9  objective medical evidence supporting descriptions of pain and limitations
10  negatively affected claimant's credibility regarding her inability to work). Although
11  a lack of objective evidence supporting plaintiff' symptoms cannot be the sole
12  reason for rejecting her testimony, it can be one of several factors used in evaluating
13  the credibility of her subjective complaints. *Rollins v. Massanari*, 261 F.3d 853,
14  856-57 (9th Cir. 2001).
15       Second, the ALJ properly discounted plaintiff's subjective complaints based
16  upon ordinary techniques of trustworthiness determination, such as inconsistent
17  statements regarding her daily activities. *See* AR at 21; *see also Thomas*, 278 F.3d
18  at 958-59 (when weighing a claimant's credibility, the ALJ may consider
19  inconsistencies in the claimant's testimony); *Tonapetyan*, 242 F.3d at 1148 (ALJ
20  may engage in ordinary techniques of credibility evaluation, such as considering
21  inconsistencies in a claimant's testimony). The ALJ found that statements in a
22  function report made by Gabriela Valdez on behalf of plaintiff were inconsistent
23  with plaintiff's hearing testimony. AR at 21. For instance, the ALJ noted that "[i]n
24  the function report, [plaintiff] indicated her impairments did not affect dressing,"
25  and that "although it was a struggle, she was able to make her bed, do laundry, and
26  wash dishes." *Id.* But during the hearing, plaintiff testified that she has trouble
27  dressing, does very little in the way of chores around the house, and that her
28  husband does all the chores. *Id.* at 21, 39.

In addition, as noted by the ALJ, plaintiff's testimony that she never drives to the doctor because it is too far is inconsistent with her statement to Dr. Reynaldo Abejuela – during a January 26, 2009 Complete Psychiatric Evaluation, when she lived in San Jacinto (*see* AR at 54, 181, 202) – that "she drove herself [to the appointment in Riverside] and did not need any assistance." *See id.* at 21, 47, 214. Plaintiff disagrees with the ALJ's interpretation of her testimony. Pointing to a statement she made much earlier during the hearing regarding her doctor in Tijuana,[3] plaintiff argues that she meant she never drives to her doctor in Tijuana. *See* Pl.'s Mem. at 8. Plaintiff's contention that she meant only that she does not drive as far as Tijuana is not supported by her testimony, in that at the time she testified she never drives to the doctor, she also testified that she only drives to her daughter's house, ten minutes away. *See* AR at 47. The drive between San Jacinto and Riverside is much longer than ten minutes. Moreover, because "the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954.

Accordingly, the court finds that the ALJ provided clear and convincing reasons, supported by substantial evidence, for discounting plaintiff's subjective complaints of pain and limitation.

---

[3] Earlier in the hearing, the following colloquy took place between plaintiff and the ALJ:
[Plaintiff]:  Sometimes I get very dizzy.
[ALJ]:  How long have you had dizziness?
[Plaintiff]:  I think I'm feeling them now for about three years.
[ALJ]:  Okay. You've been to a doctor for that?
[Plaintiff]:  Yes, but they haven't found anything.
[ALJ]:  What doctor have you gone to?
[Plaintiff]:  I go to a doctor in Tijuana . . . . I think his name [is] Hector . . . Rodriguez . . . . Right now my brain's not working very well.
AR at 38.

## V.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

Dated: October 11, 2012

_____
SHERI PYM
UNITED STATES MAGISTRATE JUDGE